**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JEFFREY CORBITT,

      Plaintiff,

vs.                                     Case No. 3:07-cv-518-J-HTS

MICHAEL ASTRUE,
Commissioner of Social
Security, Social Security
Administration,

      Defendant.

_____

**OPINION AND ORDER**[1]

**I.  Status**

Jeffrey Llewellyn Corbitt is appealing the Social Security
Administration's denial of his claim for Supplemental Security
Income.  His alleged inability to work is based on "mental illness
plus HBP, high ch[o]l[est]erol, asthma and diabetes[.]"  Transcript
of Administrative Proceedings (Tr.) at 69 (capitalization and
emphasis omitted).  Plaintiff was ultimately found not disabled by
Administrative Law Judge (ALJ) Stephen C. Calvarese in a Decision
entered on December 13, 2006.  *Id.* at 17, 22, 23.  Mr. Corbitt has
exhausted the available administrative remedies and the case is

---

[1]      The parties consented to the exercise of jurisdiction by a United
States Magistrate Judge.  Notice, Consent, and Order of Reference - Exercise of
Jurisdiction by a United States Magistrate Judge (Doc. #18).

properly before the Court.   Plaintiff makes a variety of allegations in an attempt to demonstrate the Commissioner erred. *See* Plaintiff's Brief (Doc. #15; Memorandum) at 9-22.   His arguments will be further described in the context of the discussion that follows.

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[2] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by 'substantial evidence[.]'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).   Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Ingram*, 496 F.3d at 1260.  Despite the existence of support in the

---

[2]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).   An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy.   *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

#### A.    Opinion of Nurse Practitioner

According to Plaintiff, "[t]he ALJ erred in failing to discuss in any manner the opinions of the nurse practitioner (Sakinah Nemati) who was treating him during the relevant time period and who opined that [he] could not work on a full-time sustained basis due to his psychiatric condition."  Memorandum at 9.

"Although [an] ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . ." *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).   Rather, the judge "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation marks omitted); *see also Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

Pursuant to the regulations, a nurse is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Still, "evidence from other sources" such as nurse practitioners may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his/her] ability to" engage in work-related activities. *Id.* §§ 404.1513(d), 416.913(d). The opinions of a treating nurse practitioner constitute "evidence to be considered on the record as a whole." *Gramlisch v. Barnhart*, 464 F. Supp. 2d 876, 881 (E.D. Mo. 2006). An "ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors." *O'Connor v. Barnhart*, No. C03-3081-MWB, 2004 WL 2192730, at *5 (N.D. Iowa Sept. 28, 2004); *see also* SSR 06-03p ("Opinions from . . . medical sources . . . not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues . . . ."); *cf. Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1188 (N.D. Ala. 2006) ("improper and unreasonable" for ALJ to reject opinions of treating physical therapist due to his not being acceptable medical source); *Miles v. Barnhart*, 410 F. Supp. 2d 1113, 1116-17 (N.D. Ala. 2006) (rejection of treating therapist "as a medical source" erroneous, as such a provider is qualified under the regulations to comment on a condition's severity and effect on ability to work). "[D]epending on the particular facts in a case, and after applying the factors

for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source'" can even "outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."  SSR 06-03p.

Mr. Corbitt points to "two opinions" issued by "Ms. Nemati . . . indicating [he] is not capable of working on a full-time basis due to his rapid cycling, inconsistent moods, inability to maintain consistent focus and concentration, and reduced ability to handle stress."  Memorandum at 10 (citing Tr. at 209, 218); *see also id.* at 12.  To the extent Plaintiff is suggesting the nurse's opinion directly regarding his ability to work required discussion, such is rejected.  Even the opinion of a treating physician[3] concerning inability to work is generally of little, if any, value.[4]  A conclusion as to disability or ability to work is essentially legal rather than medical.  It "is not the type of 'medical opinion' to which the Commissioner gives controlling weight."  *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (determinations about disability or ability to work "are

----

[3]    Ordinarily, "the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

[4]    Consequently, Claimant's other assertions involving these sorts of determinations, *see id.* at 10, 13-14, 16-17, need not be further addressed.

legal conclusions[,]" not medical opinions).   As "a physician is not qualified to make" judgments as to disability or ability to work as defined by law, *Norfleet v. Sullivan*, CIV. A. No. 89-5978, 1990 WL 29675, at *4 (E.D. Pa. Mar. 14, 1990); *see also Townsend v. Apfel*, 47 F. Supp. 2d 958, 964 (N.D. Ill. 1999), an ALJ would be unjustified in according significance to legal determinations offered by doctors.   Thus, the judge will not be faulted for omitting mention of conclusions as to disability or ability to work submitted by physicians or nurse practitioners.

 However, to the extent the evidence in question sheds light on Plaintiff's psychological limitations, the judge needed to afford it appropriate consideration.   The ALJ acknowledged both "schizoaffective and bipolar disorder" to be present and determined Mr. Corbitt experiences "moderate difficulties in maintaining concentration, persistence, or pace." Tr. at 19.  To a significant degree, this would seem to account for the difficulties highlighted in records cited by Claimant.   *See id.* at 209, 218.[5]   Yet, in specifying the mental aspects of Plaintiff's residual functional capacity (RFC), the ALJ found only that "he has moderate limitations carrying out detailed instructions and dealing with changes in a routine work setting."   *Id.* at 20 (emphasis omitted).

---

[5]     The judge, in fact, indicated he had given weight to "the records from the Mental Health Resource Center[.]"  *Id.* at 20.

It is not obvious these limitations were sufficient to encompass the impairments recognized by the ALJ. *Cf., e.g., Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (limitation to simple, unskilled tasks not sufficient to incorporate impairments such as moderate difficulties with maintaining concentration, persistence, or pace); *Davis v. Astrue*, Civil Action No. 06-3550, 2007 WL 2248830, at *4 (E.D. Pa. July 30, 2007) (requiring deficiencies in concentration, persistence or pace to be specified in the hypothetical); SSR 96-8p (where ALJ completes Psychiatric Review Technique Form (PRTF), mental RFC evaluation for use at steps 4 and 5 "requires a more detailed assessment by itemizing various functions . . . summarized on the PRTF").

Still, in that the ALJ ultimately relied on testimony from a vocational expert (VE), *see* Tr. at 22, the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE. *Cf. Dowell v. Barnhart*, No. 06-1023-WEB, 2006 WL 4046164, at *3 (D. Kan. Oct. 31, 2006) (noting that, "[i]n his hypothetical question to the [VE], the ALJ clarified his RFC findings . . ."). In this case, the hypothetical set out mental restrictions in much greater detail than the RFC finding. *See* Tr. at 268-69 ("[T]his person has moderate restrictions in the ability to understand, remember, and carry out detailed instructions[;

m]aintain concentration for extended periods[; c]omplete a normal workday and workweek without interruptions and psychologically based symptoms and perform at a consistent pace with[out an] unreasonable number and length of rest periods. . . . [L]et's assume an individual could only perform simple instructions[ a]nd[] would have occasional problems with attention, concentration, occasionally affecting productivity[.]").   In light of this elaborated description, the Court does not perceive a need for remand concerning the instant issue.  The judge acknowledged, and appears to have been influenced by, the records encompassing the nurse's opinions.  Since, as discussed, it would have been improper for him to give deference to the legal conclusions expressed therein, it is unclear what further consideration he was compelled to afford.

**B.    Rejection of Examining Doctors' Opinions**

Plaintiff argues "the ALJ . . . failed to adequately explain his basis for rejecting the opinions of both examining medical sources who examined [him] on behalf of the Commissioner." Memorandum at 14.

Several factors govern the analysis of information from nontreating[6] sources.  As an initial matter, it is noted examining

---

        [6]      "Nontreating source means a physician, psychologist, or other acceptable medical source who has [performed an] examin[ation] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."  20 C.F.R. §§ 404.1502, 416.902 (emphasis omitted).

doctors' opinions are not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam). However, the ALJ is required to consider every medical opinion that is in evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Unless a treating source is given controlling weight, an opinion should be evaluated by examining such factors as: (1) length and frequency of treatment (if any), (2) nature and extent of the relationship, (3) supportability, (4) consistency, and (5) specialization. *See id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). Furthermore, as mentioned earlier, the ALJ "must explain why significant probative evidence has been rejected." *Vincent*, 739 F.2d at 1395 (internal quotation marks omitted).

The first examiner whose opinion is at issue is Lauren Lucas, Ph.D., who assessed Claimant on March 8, 2005. *See* Tr. at 136. Dr. Lucas opined that Mr. Corbitt probably suffers from bipolar disorder, "attends fairly well for immediate recall but may have greater difficulty with intermediate recall[,]" and "is probably not psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors without risk of decompensation." *Id.* at 138. The ALJ "considered Dr. Lucas' opinion regarding the claimant's inability to sustain work but f[ound] this one time

examination not supported by the medical evidence of record." *Id.* at 20.

Plaintiff's argument appears focused on the rejection of the doctor's determination as to ability to work. As previously discussed, the judge was under no duty to accept such an opinion. Moreover, even assuming every definite, relevant opinion from Dr. Lucas should be accepted, Plaintiff identifies no such opinions bearing on work-related activities. That Claimant "may have" certain difficulties or "probably" lacks particular competencies are not findings capable of adoption.[7]

The other examining doctor at issue, John A. Muenz, Jr., M.D., rendered an opinion that Plaintiff asserts was mischaracterized by the ALJ. He contends the judge "discredited Dr. Muenz's opinion because the ALJ concluded that what Dr. Muenz really meant was that [he] would be disabled but for his medical treatment." Memorandum at 17. Rather, the physician "agreed that Mr. Corbitt cannot perform any work[ and] explained that [he] should receive disability benefits due to his psychiatric condition." *Id.* As just reiterated, the ALJ was not obligated to pay any deference to these sorts of opinions.

---

[7] At one point, the psychologist lists insight as "[p]oor[,]" and judgment as "[f]air[,]" *id.* at 138, but Plaintiff makes no specific argument as to whether or how the ALJ should have reflected these opinions in his findings. Concerning fair judgment, such would seem to be accommodated by the limitation to simple tasks.

C.    RFC

Plaintiff next claims his "medical history, medication history, and current treatment records support his ongoing fluctuations in mood as well as other aspects of functioning." Memorandum at 17; *see also id.* at 15 ("[T]he question of whether Mr. Corbitt could perform work on a sustained basis despite his on-again and off-again exacerbations was critical to the ALJ's analysis.").

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations."   *Id.*   It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition.   *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairments . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered.   *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision.   *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations

may be exertional, nonexertional, or both.  *Id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner.  *See id.* §§ 404.1546, 416.946.  According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

The ALJ's RFC finding did not specifically account for fluctuations or exacerbations in symptoms.  Rather, it described "moderate limitations carrying out detailed instructions and dealing with changes in a routine work setting."  Tr. at 20 (emphasis omitted).  Plaintiff, though, appears to rely largely upon his own statements as reported to Dr. Lucas, *see* Memorandum at 15-16, and has not demonstrated the ascribed RFC was deficient along the lines alleged.  He also asserts his inability to remain "mentally stable for any meaningful period of time . . . is evident by reading through the Mental Health Resource Center notes."  *Id.* at 17.  While the notes suggest variability--much as one might expect with a patient believed to suffer from bipolar disorder--it is not clear the ALJ was required to account for this in his RFC determination beyond the limitations recognized.  *Cf.* Tr. at 272 (ALJ's statement at hearing that he noticed "some treating physician position that says unable to sustain work due to rapid

cycling[,]" but the judge was "not actually seeing any . . . restrictions"). Similarly, even if the judge were to accept Dr. Muenz's statement that Plaintiff's controlled mental disorder had "the potential for breakthrough at any moment[,]" *id.* at 162, the day-to-day functional consequences would not be obvious.

### D.    Reliance on Nonexamining Sources

Mr. Corbitt alleges error to the extent "the ALJ chose to rely on the opinion[s] of state agency nonexamining psychologists who never even treated" him "and more importantly, never even reviewed any treating progress notes (all were submitted after the opinions were rendered) and therefore had no idea regarding the cycling between depressed and manic phases as well as the other symptoms." Memorandum at 14 (emphasis omitted).

While the ALJ is not bound by the findings of nonexamining psychologists, such opinions should not be ignored and the judge "'must explain the weight given to these opinions[.]'" *McAnally v. Astrue*, 241 F. App'x 515, 519 (10th Cir. 2007) (quoting SSR 96-6p). Whereas Plaintiff emphasizes "the opinion of a nonexamining state agency consultant, standing alone, does not constitute substantial evidence[,]" Memorandum at 14, here the judge relied on more than the opinions of nonexaminers. He drew upon evidence from several examining sources to support his conclusions. *See* Tr. at 20-21 (citing records from various consultants, state agency examiners, and the Mental Health Resource Center). Regarding the level of

- 13 -

information available to the nonexamining physicians, the Court notes it is commonplace for reviewing opinions to be based on less than the entire record as ultimately developed.  Often, said opinions are rendered well prior to the close of proceedings before an ALJ and the receipt of additional evidence.  Although the scope of the record reviewed by any source is a circumstance worth keeping in mind, the opinion is not automatically valueless where that record was less than complete.  Here, it was permissible for the judge to utilize the opinions at issue as a partial justification for his determination.

E.    **VE vs. *Dictionary of Occupational Titles* (*DOT*)**

Plaintiff complains "[t]he ALJ erred in failing to resolve inconsistencies between the [VE's] testimony and the [*DOT*.]" Memorandum at 18.

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (per curiam) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (per curiam)). According to SSR 00-4p, an ALJ must determine which source to credit when VE testimony conflicts with the *DOT*.  Previously, the Eleventh Circuit held "that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (internal quotation marks omitted).  Uncertainty as to the continuing viability of *Jones* has

arisen in the wake of SSR 00-4p.  *See, e.g., Leonard v. Astrue*, 487
F. Supp. 2d 1333, 1339 (M.D. Fla. 2007) (acknowledging "[t]he
Eleventh Circuit has not addressed SSR 00-4p[,]" and concluding VE
testimony no longer automatically trumps the *DOT*).   Yet, in a
recent unpublished opinion, the Eleventh Circuit considered the
matter and determined *Jones* remained controlling law.  *Miller v.
Comm'r of Soc. Sec.*, No. 07-11364, 2007 WL 2461771, at *2 (11th
Cir. Aug. 31, 2007) (per curiam).

Particularly in light of *Miller*, the Court is unwilling to
view *Jones* as anything other than binding precedent.  Thus, "[e]ven
assuming that an inconsistency existed between the testimony of the
vocational expert and the DOT," failure to resolve the conflict
prior to relying upon the VE would not constitute error.  *Miller*,
2007 WL 2461771, at *2.

### F.  Hypothetical

Lastly, it is argued the judged "incorrectly relied on
testimony that was based on an inaccurate hypothetical question as
to the extent of Mr. Corbitt's ability to read, write, and use
numbers."  Memorandum at 18 (emphasis omitted).

For VE testimony to provide substantial evidence of a
claimant's ability to work, the hypothetical question eliciting
that testimony must have described adequately all significant
impairments and other occupational factors.  *See Phillips v.
Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (question must

include all impairments); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (per curiam) (VE testimony needs to relate to person with claimant's education, skills, experience, and limitations). The necessity of comprehensiveness does not, of course, extend to limitations properly rejected by the ALJ.  *Crawford*, 363 F.3d at 1161.

In specifying the claimant's impairments, the judge is not required to use diagnostic terms or refer to the medical conditions themselves.  *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (per curiam); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996)).  Rather, the individual's functional limitations are to be conveyed to the expert.  *See Cooper*, 217 F. App'x at 453; *Webb*, 368 F.3d at 633.

It is asserted "[t]he ALJ's failure to incorporate his own findings as to Mr. Corbitt's poor ability to read, write and use numbers was clear error."  Memorandum at 20; *see also id.* at 19-20 ("The ALJ erred in failing to ask the VE to assume that Mr. Corbitt suffers from a poor ability to read, write and use numbers and instead in asking the VE to assume that he only had a <u>fair</u> ability to perform these functions."), 22.  The judge indeed found Claimant "has . . . a poor ability to read, write, and process numbers." Tr. at 20 (emphasis omitted).  In the hypothetical, he indicated "a

fair to poor ability to read, write and use numbers." *Id.* at 267. The Court is of the opinion the difference was not material under the circumstances, as the expert was logically required to assume Claimant's abilities in these dimensions may be considered poor. Had the VE believed any job about which he testified required fair ability in any of the three areas, it would have behooved him to so state.   While the *DOT* may suggest the jobs necessitated fair reading skills, the expert, whose testimony automatically trumps the dictionary, was of the view that an individual with a fair to poor reading ability (which certainly includes *poor*) was capable of performing them.

### IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of April, 2008.

/s/        Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
    and pro se parties, if any

- 17 -